IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  07-30078 |
| | ) | |
| JASON JOHNSON, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on Defendant's Objection to the U.S. Magistrate Judge's Report and Recommendation on Motion to Suppress (d/e 12) (Objection).  Johnson filed a Motion to Suppress Evidence (d/e 7) (Motion to Suppress).  The Court referred the Motion to Suppress to United States Magistrate Judge Byron G. Cudmore to conduct an evidentiary hearing and issue a Report and Recommendation.  October 31, 2007, Order.  Judge Cudmore conducted an evidentiary hearing on December 4, 2007, and recommended denying the Motion to Suppress.  Report and Recommendation entered December 10, 2007, (d/e 10).  Johnson now objects.  This Court must review the Motion to Suppress and

1

the Report and Recommendation de novo. 28 U.S.C. § 636(b)(1)(B)&(C). The Court has reviewed the transcript of the hearing, the evidence submitted at the hearing, the Objection, and arguments submitted by the parties. For the reasons set forth below, the Court overrules the Objection and adopts the Report and Recommendation as set forth below.

## FACTS

In a one-count Indictment, the Government charged Defendant Johnson with unlawful transport of firearms in violation of 18 U.S.C. § 922(g)(1). Indictment (d/e 1). On May 11, 2007, at about 2:05 p.m., Illinois State Police Trooper Steven M. Ent observed a GMC Suburban with tinted front windows proceeding southbound on I-55. December 4, 2007, Hearing Transcript (d/e 13) (Transcript), at 5. Because the tinted windows violated Illinois law concerning motor vehicle equipment, Ent stopped the Suburban and approached the front passenger's side door. Id. at 5-6. Johnson was in the driver's seat and a woman was in the front passenger seat. Id. at 6, 8.

Ent asked Johnson for his license and explained that he had stopped the vehicle because of the tinted windows. Id. at 6. When Johnson handed Ent his license, Ent observed that his hand shook markedly. Id. at 7.

2

According to Ent, "This was a much more extreme nervousness than most general public has when they're stopped." Id. Ent also asked for Johnson's insurance information, and when Johnson provided it, Ent noticed that his hand was shaking enough to rattle the paper. Id.

After Ent received Johnson's license and insurance information, he returned to his squad car and ran a computer inquiry on Johnson. Id. at 9. Johnson and the female passenger remained in the Suburban. Id. Ent's computer inquiry revealed that Johnson was on parole and had an extensive criminal history involving drugs. Id. At that point, Ent called for Trooper Maro, who works with a canine, to come to the scene. Id. at 10. Ent did not yet believe that he had probable cause to search Johnson's vehicle, but he wanted to conduct at least a canine walk-around. Id. at 44-45, 47. From his car, Ent began writing a warning for the tinted windows. Id. at 10-11. While he was writing the warning, Trooper Maro arrived with his canine. Id. at 11. Maro's canine is trained to detect marijuana, cocaine, crack cocaine, heroin, and methamphetamine, and to apprehend suspects. Id. at 62-63.

After finishing the warning, Ent then approached Johnson's vehicle and asked him to step out so that Ent could explain the warning. Id. at 11.

Johnson did so, and Ent explained the warning and asked Johnson to sign it. Id. While Johnson signed the warning, Ent asked him to explain the basis of his parole. Id. Johnson advised that he was on parole for drugs. Id. Ent then asked him whether his parole agent was aware that he was traveling, and Johnson stated that his agent was. Id. at 12. Ent then asked Johnson whether he had anything illegal in the vehicle. Id. Johnson said that he did not. Id. By this point, Johnson had signed the warning, but Ent had not yet given him a copy of the ticket. Id. at 52-53. Ent asked to search the vehicle. Id. at 12. Johnson responded that he would not mind, but he needed to get back to Collinsville to see his son. Id. at 12-13. Ent asked Johnson to provide a clear yes or no, and Johnson "stated that he was really on a schedule." Id. at 13. Ent considered that another unclear answer. Id.

Ent informed Johnson that because Maro was on the scene with a canine, Maro would walk the dog around the exterior of the car. Id. Johnson stated that the dog would probably alert, because earlier that day, someone had smoked marijuana in the vehicle. Id. at 69. Maro did not smell marijuana, however; he testified that marijuana odor is easy for humans to detect shortly after it is smoked. Id. at 70.

In preparation for the canine walk-around, Ent and Maro then patted Johnson down for weapons.  Id. at 14, 52, 55.  Ent testified that they did so for officer safety because Johnson was outside the car, and they knew he had an extensive criminal history, including prison time, involving drugs.  Id. at 55.  According to Ent, they had reasonable suspicion that Johnson might be armed.  Id.  During the pat-down, Ent felt a large bundle of what seemed to be money, and Johnson indicated that it was $700 for a vehicle axle.  Id. at 14.  Ent later learned that it was in fact a large wad of cash, but he did not remove the cash from Johnson's person at this time.  Id. at 14-15.  After the pat-down, Ent handed Johnson a copy of the written warning.  Id. at 26.  Ent then walked to the front of the car and asked the female passenger to step out.  Id. at 16.  She did so, and Ent performed a pat-down on her and asked her where they were headed.  Id. at 16-17.  The woman said that they needed to get to Collinsville so that she could get to work.  Id. at 17.

Maro and the dog then took two circles around the vehicle.  Id. at 67.  On the second pass, the dog sat down near the driver's door.  Id. at 68.  The dog is trained to sit when he detects narcotics.  Id.  According to Maro, this dog had previously conducted several hundred narcotics sniffs and had only

a 5-percent error rate.  Id. at 63-66.

After the canine walk-around, Ent searched the vehicle and located a box of .22 caliber ammunition inside a black purse on the front seat and behind the stereo, which was unattached to the dashboard, a white sock containing a .22 caliber pistol and two clear plastic bags of crack cocaine. Id. at 17-18.

Ent's squad car was equipped with video and audio recording equipment.  Id. at 19.  During this traffic stop, the audio did not function properly, but Ent testified that the video recorded was an accurate record of the stop.  Id.  The Government introduced this recording into evidence at the suppression hearing; Johnson had no objection.  Id. at 22.  According to the tape, Ent initiated the traffic stop at 2:06 p.m.  Id. at 20.  At 2:08 p.m., he walked to his squad car to run the computer inquiry.  Id. at 23.  At 2:17 p.m., Ent returned to Johnson's vehicle.  Id. at 24.  At 2:18 p.m., Johnson signed the ticket, and Maro appears in the recording.  Id. at 25.  At 2:19 p.m., Ent patted down Johnson and then provided him a copy of the warning ticket; at 2:20 p.m., Ent talked with the female passenger.  Id. at 26.  At 2:21 p.m., Maro returned to his squad car to retrieve his canine, and at 2:22 p.m., he walked around Johnson's vehicle with the dog.  Id. at 27.

At 2:23 p.m., the walk-around had finished, and Ent and Maro talked with Johnson regarding the dog's alert. Id. at 28. At 2:24 p.m., Ent began searching the vehicle; by 2:26 p.m. he had found the box of ammunition. Id. at 29. At 2:27 p.m., Maro handcuffed Johnson. Id. Ent continued the search, and by 2:33 p.m., he had located the sock behind the stereo which contained the pistol. Id. at 32.

Johnson now seeks to suppress the evidence seized from his vehicle and his person together with any oral or written statements he made to ISP officers at the time of and subsequent to his arrest. Motion to Suppress, at 3. Magistrate Judge Cudmore issued a Report and Recommendation that the Motion to Suppress be denied. He concluded that Johnson was lawfully detained at the time of the canine sniff; the canine sniff implicated no Fourth Amendment concerns; the traffic stop was not unreasonably prolonged, and after the canine sniff, the officers had probable cause to search the Suburban.

## ANALYSIS

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. After a defendant asserting

7

a Fourth Amendment violation establishes that he has standing to challenge a warrantless search or seizure, the Government must prove by a preponderance of the evidence that the search or seizure fell within a specifically established and well-delineated exception to the warrant requirement.  See United States v. Sweeney, 688 F.2d 1131, 1143 (7th Cir. 1982); United States v. Basinksi, 226 F.3d 829, 833 (7th Cir. 2000).  Here, the Government conceded that Johnson has standing to challenge the search and seizure at issue, and the Court sees nothing in the record to contradict that finding.  See United States Response in Opposition to Defendant's Motion to Suppress Evidence (d/e 9), at 1.  Thus, the only issue is whether the Government has proven by a preponderance of the evidence that an exception to the warrant requirement applies.

The Court holds that it has.  First, Johnson has not contested that probable cause justified Ent's initial traffic stop of Johnson's vehicle.  Ent observed that the Subaru had tinted front windows, in violation of 625 ILCS 5/12-503.  Where an officer reasonably believes that a driver has committed even a minor traffic offense, probable cause supports a traffic stop.  United States v. Cashman, 216 F.3d 582, 586 (7th Cir. 2000).

Second, incorporating a canine sniff into the traffic stop did not

infringe on Johnson's Fourth Amendment rights. "[T]he use of a well-trained narcotics-detection dog--one that does not expose noncontraband items that otherwise would remain hidden from public view--during a lawful traffic stop, generally does not implicate legitimate privacy interests." Illinois v. Caballes, 543 U.S. 405, 409 (2005)(internal quotation marks and citation omitted). Adding a dog sniff of the exterior of a vehicle to a lawful traffic stop executed in a reasonable manner does not violate the Fourth Amendment. Id. at 408.

Third, the traffic stop was not unreasonably prolonged. A seizure justified only by the issuance of a warning ticket to a driver can become unlawful if it is "prolonged beyond the time reasonably required to complete that mission." Caballes, 543 U.S. at 407. Here, it took Ent nine minutes to write Johnson's ticket and make a computer inquiry on Johnson, during which time he also called for Maro's assistance. Nine minutes is not an unreasonable length of time to write a ticket. By the time Ent finished writing the warning ticket, Maro had arrived. Thus, calling the canine unit to the scene did not prolong the stop. Once Ent had written the warning, he returned to Johnson's car, explained the warning to Johnson, and had Johnson sign the warning. While Johnson was signing, Ent asked him about

9

his parole status, whether he had anything illegal in the vehicle, and whether they could search the vehicle. In <u>United States v. Martin</u>, the Seventh Circuit held that during a traffic stop, police may question an individual about matters unrelated to the stop provided that the questions do not unreasonably delay the individual. <u>Martin</u>, 422 F.3d 597, 602 (7th Cir. 2005). From the video, it appears Johnson's questions took no more than two minutes. This is not an unreasonable delay.

Johnson argues that once he signed his warning ticket, the traffic stop was complete; all subsequent interaction, including the canine sniff, prolonged the seizure unreasonably. Johnson's argument ignores the fact that he was stopped based on probable cause. "Probable cause makes all the difference--and as <u>Whren v. United States</u>, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), shows, traffic stops supported by probable cause are arrests, with all the implications that follow from probable cause to believe that an offense has been committed." <u>United States v. Childs</u>, 277 F.3d 947, 953 (7th Cir. 2002) (en banc). In <u>Childs</u>, the police stopped a car for a cracked windshield and allegedly delayed conducting license and warrant checks on the driver to ask the passenger whether he was carrying marijuana. <u>Id.</u> The Seventh Circuit held that this unrelated questioning did

10

not prolong the detention, and while the questioning took place before the police issued a ticket, the Court specifically rejected the theory that a probable cause traffic stop ends when the officer provides a ticket:

> Because probable cause supported this stop, neither the driver nor Childs had a right to be released the instant the steps to check license, registration, and outstanding warrants, and to write a ticket, had been completed. It is therefore not necessary to determine whether the officers' conduct added a minute or so to the minimum time in which these steps could have been accomplished.
> . . . .
> The point . . is that . . . the fourth amendment does not require the release of a person arrested on probable cause at the earliest moment that step can be accomplished. What the Constitution requires is that the entire process remain reasonable.

Id.

Thus, on a probable cause stop, no bright-line rule makes any detention after the issuance of a ticket unreasonable. The issue is whether the total period of seizure is unreasonable. Here, only fives minutes elapsed between the time Johnson signed the ticket and the completion of the canine sniff, and only four minutes elapsed between when Ent provided Johnson a copy of the ticket and the end of the canine sniff. The Seventh Circuit has described a five-minute wait just for a canine unit to arrive on the scene of a traffic stop as a "modest incremental delay for a person

already lawfully arrested." United States v. Carpenter, 406 F.3d 915, 917 (7th Cir. 2005). Thus, the Court finds that the four- or five-minute delay incorporating the full canine walk-around did not make this entire process unreasonable.

    Fourth, the fact that Johnson was stopped on probable cause also dooms his argument that the pat-down violated the Fourth Amendment. The probable cause stop technically put Johnson under arrest. See Childs, 277 F.3d at 953. And, incident to arrest, officers may conduct a full search of the arrestee's person. United States v. Robinson, 414 U.S. 218, 224 (1973); see also Childs, 277 F.3d at 952 ("What is more, a person stopped on probable cause may be searched fully, while a person stopped on reasonable suspicion may be patted down but not searched."). "When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated." Chimel v. California, 395 U.S. 752, 762-63 (1969). Ent conducted only a pat-down here, and he did so before handing Johnson his ticket copy. Because the pat-down was incident to arrest, Ent need not have been able to point to

12

specific and articulable facts indicating that Johnson might be armed. This limited search was not unreasonable.

Fifth, even if the pat-down (after Johnson signed the ticket) and detention for a canine sniff (after Ent handed Johnson his copy of the ticket) were not justified by the probable cause stop, Ent had reasonable suspicion sufficient for a Terry investigatory stop and pat-down. See United States v. Turner, 2002 WL 257517, at *8 (N.D. Ind. Feb. 20, 2002) ("Here, something did occur during the traffic stop which generated the necessary reasonable suspicion to justify a further detention."). Under Terry v. Ohio, a person may be detained briefly when there is reasonable suspicion of criminal activity. Terry, 392 U.S. 1, 28 (1968). Reasonable suspicion is a lower standard than probable cause: a hunch will not suffice, but if the officer can "set forth specific and articulable facts . . . based on the totality of the circumstances" that suggest criminal activity, the standard is met. United States v. Brown, 188 F.3d 860, 864 (7th Cir. 1999). In addition to reasonable suspicion of criminal activity, for a pat-down the police officer must be able to point to "specific and articulable facts indicating that the individual may be armed and present a risk of harm to the officer or to others." Id. at 864.

Here, the officers could set forth specific and articulable facts, under the totality of the circumstances, that suggested criminal activity. First, after running his license, Ent learned that Johnson had an extensive criminal history for drug crimes. United States v. Walden, 146 F.3d 487, 490 (7th Cir. 1998) ("criminal record in conjunction with other information can form the basis of a reasonable suspicion"). Second, before either the pat-down or the canine sniff, Johnson specifically told Ent that earlier in the day, someone had smoked marijuana in his car. Third, throughout the stop, Johnson displayed more anxiety than most people stopped only for traffic violations exhibit.

Numerous Seventh Circuit cases approve of the consideration of unusual nervousness in evaluating reasonable suspicion. See, e.g., Brown, 188 F.3d at 865 (considering unusual nervousness in a totality of the circumstances analysis); United States v. Finke, 85 F.3d 1275, 1282 n.4 (7th Cir. 1996) (collecting cases). In United States v. Wilkie, the Seventh Circuit criticized consideration of this factor:

> That a defendant "appeared nervous" is a subjective impression that we have held contributes nothing to the objective basis for suspecting criminal activity, see United States v. Broomfield, 417 F.3d 654, 655 (7th Cir. 2005) (collecting cases), and this must remain true notwithstanding an officer's attempt to recast

14

> his subjective impressions in objective-sounding terms like "labored breathing" or pulsating carotid artery." . . . The district court should not have given these observations any weight.

Wilkie, 182 Fed. Appx. 533, 536 (7th Cir. 2006). But, Wilkie is nonprecedential, and Broomfield states only, in dicta, that "[w]hether you stand still or move, drive above, below, or at the speed limit, you will be described by police as acting suspiciously should they wish to stop or arrest you. Such subjective, promiscuous appeals to an ineffable intuition should not be credited." Broomfield, 417 F.3d at 655. Broomfield contains no blanket prohibition on consideration of any sign of nervousness. Even looking at its authority, the cases Broomfield collects do not stand for the proposition that nervousness should never be considered. See, e.g., United States v. Jones, 269 F.3d 919, 928-29 (8th Cir. 2001) (holding that courts should treat nervousness with caution, but that unusual anxiety may, in combination with other factors, support a finding of reasonable suspicion). Thus, this Court finds that unusual nervousness is a proper factor for consideration.

Considering all three of these factors, the Court finds that Ent had reasonable suspicion of criminal activity before he conducted the pat-down. Moreover, after the pat-down of Johnson but before the canine sniff, Ent

15

spoke with the passenger, whose story regarding their trip conflicted with Johnson's. The inconsistent stories added to the reasonable suspicion the officers already possessed, making the case for a canine sniff even stronger. See United States v. Muriel, 418 F.3d 720, 726 (7th Cir. 2005).

For a Terry pat-down, though, the officers also needed reasonable suspicion that Johnson could be armed and present a danger to them or others; the Court finds that the totality of the circumstances here supported such a suspicion. Ent knew that Johnson had a criminal record for drugs and that someone had been smoking marijuana in the Johnson's vehicle earlier that day. Because "weapons and drugs often go 'hand in hand,'" the officers had reason to suspect that Johnson might be armed. See United States v. Tate, 2007 WL 2819543, at *6 (E.D. Wis. Sept. 26, 2007); United States v. Alvarez, 2005 WL 3348923, at *4 (E.D. Wis. Dec. 8, 2005). Moreover, Johnson was outside his vehicle and would remain so during the canine sniff, presenting a danger to the officers. Thus, even if the officers had needed reasonable suspicion to perform the pat-down and canine sniff here, they had it.

Finally, once the dog alerted, the officers clearly had probable cause to search Johnson's vehicle. See Illinois v. Gates, 462 U.S. 213, 238 (1983);

United States v. Ganser, 315 F.3d 839, 844 (7th Cir. 2003). Under the automobile exception, once officers have probable cause to believe that a vehicle contains contraband or evidence of a crime, they may conduct a warrantless search. Carroll v. United States, 267 U.S. 132, 153-56 (1925). That search may extend "to all parts of the vehicle in which contraband or evidence could be concealed, including closed compartments and trunks." United States v. Patterson, 65 F.3d 68, 70 (7th Cir. 1995) (internal quotation marks and citations omitted). Thus, Ent's search of Johnson's vehicle, including the stereo compartment, was proper.

THEREFORE, Defendant's Objection to the U.S. Magistrate Judge's Report and Recommendation on Motion to Suppress (d/e 12) is OVERRULED. The Court adopts the Report and Recommendation (d/e 10). The Motion to Suppress Evidence (d/e 7) is DENIED.

IT IS THEREFORE SO ORDERED.

ENTER:  January 18, 2008

    FOR THE COURT:

                          s/ Jeanne E. Scott
                          JEANNE E. SCOTT
            UNITED STATES DISTRICT JUDGE